UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CLINT EDWARDS,                                    :
     Plaintiff,          :
           :
v.                                                :       **OPINION AND ORDER**
           :
ASSISTANT WARDEN ERIC MIDDLETON,                  :       19 CV 1362 (VB)
CAPT. ROBERTS, CAPT. VANLIEROP, SGT.              :
GRANT, SGT. LOPEZ, and C.O. AROCHO,               :
     Defendants.          :
--------------------------------------------------------------x

Briccetti, J.:

  Plaintiff Clint Edwards, proceeding pro se and in forma pauperis, brings this action

pursuant to 42 U.S.C. § 1983 against defendants Assistant ("Asst.") Warden Eric Middleton,

Captain ("Capt.") Roberts, Capt. VanLierop, Sergeant ("Sgt.") Grant, Sgt. Lopez, and

Correctional Officer ("C.O.") Arocho.[1]  Liberally construed, plaintiff's amended complaint

alleges violations of his Fourteenth Amendment rights.

  Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule

12(b)(6).  (Doc. #43).

  For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Although plaintiff's original complaint named Westchester County as a defendant in this
action, the amended complaint does not name Westchester County as a defendant.  The amended
complaint also does not include any allegations against Westchester County.  Accordingly, the
Court will instruct the Clerk of Court to terminate Westchester County as a defendant in this
case.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accept as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

At all relevant times, plaintiff was a pretrial detainee at the Westchester County Department of Correction ("WCDOC") facility in Valhalla, New York.

I.    February 2018 Cell Transfer and Placement on Administrative Segregation Status

Plaintiff alleges that on or about February 14, 2018, he was transferred to 2-East Witness Room #1, which lacked a desk, table, shelf, and storage bin.  Plaintiff alleges that although he submitted a grievance to request a desk, Capt. Roberts denied the grievance.

Plaintiff claims that on March 12, 2018, he was informed for the first time that he had been placed on administrative segregation since February 14, 2018.[2]  Plaintiff alleges that prior to his placement on administrative segregation status, he should have been, but was not, "served with the necessary paperwork ."  (Doc. #35 ("Am. Compl.") at ECF 4).  Plaintiff also alleges that

---

[2]    On February 11, 2019, plaintiff filed his original complaint, and several exhibits to same, including a grievance dated March 12, 2018.  In that grievance, plaintiff wrote:  "I didn't even know I was on [administrative segregation] until today (3-12-[18])," and requested he be informed why, when, and by whom he was placed on administrative segregation.  (See Doc. #2 ("Compl.") at ECF 18, "Ex. C").  Because plaintiff is proceeding pro se, and because he attached exhibits to the original complaint, but not the amended complaint, which are referenced in the amended complaint, the Court will consider those exhibits along with the amended complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (noting that in considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint").

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

"ECF _" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

an inmate must be "serve[d]" with "paperwork within twenty-four hours after being placed into Administrative Segregation," but does not specify what mandates such service.  (Id. at ECF 10–11).  Plaintiff further alleges that on or about March 21, 2018, in response to his March 12, 2018, grievance, Sgt. Grant informed plaintiff he could not file a grievance regarding his administrative segregation status.

Plaintiff alleges that on or about March 13, 2018, Asst. Warden Middleton and non-party Sgt. Greenfox informed plaintiff that although plaintiff had complained of "inhumane jail conditions [he] was being subjected to in" 2-East Witness Room #1, plaintiff "would not be moving to the new part of WCDOC and [would] continue to be housed in the old part of WCDOC as a result of [his] protective custody status being lifted."  (Am. Compl. at ECF 4).  However, plaintiff also alleges that "a few hours later[, he] was relocated to housing unit 2-East as a result of being released from protective custody status."  (Id. at ECF 5).

II.    Assault on May 25, 2018

Plaintiff alleges that on or about May 25, 2018, another inmate attacked him because C.O. Arocho had put a "hit" on plaintiff and "falsely conveyed to the other inmate that [plaintiff] was locked up for molesting children."  (Am. Compl. at ECF 5).  Plaintiff alleges the inmate struck plaintiff's body several times and, as a result, plaintiff was taken to the medical department and felt concerned for his safety.

III.    June 2018 Cell Transfer and Placement on Administrative Segregation Status

Plaintiff alleges that on or about June 26, 2018, he was relocated from general population housing to 3-East Witness Room #1 under orders from Asst. Warden Middleton and Capt. VanLierop.  Plaintiff claims that 3-East Witness Room #1 did not have a desk, was covered in black mold, infested with bugs and mice, was extremely hot due to lack of a fan or air

conditioner, and had "a peeping tom hole[] in the wall" others used to watch plaintiff when he used the bathroom.  (Am. Compl. at ECF 12).  Plaintiff further alleges he suffered backaches, headaches, trouble sleeping, and bouts of fainting that he did not experience prior to being housed in 3-East Witness Room #1.  Plaintiff alleges he filed a grievance regarding the conditions of 3-East Witness Room #1, and told unidentified officers and medical staff about his "disgust with the living arrangements."  (Id. at ECF 13).  Plaintiff also alleges Asst. Warden Middleton and Capt. VanLierop "personally knew what [] I was being subjected to while in that disgusting 3-East Witness Room #1."  (Id.).

Furthermore, plaintiff contends that on or about June 26, 2018, he was placed on administrative segregation in response to reports by other inmates that he was "extorting" other detainees, "hoarding the television remote control," "commandeering the telephone," "secreting the housing unit board games," and "controlling the housing unit fan."  (See Am. Compl. at ECF 6).  Again, plaintiff alleges he was not provided any paperwork, and thus did not receive notice, prior to being placed on administrative segregation.  He also alleges he received such paperwork about two months after he was placed on administrative segregation.

Plaintiff also claims that on or about June 30, 2018, Capt. VanLierop confirmed to plaintiff what an unidentified "block officer" had told plaintiff on June 27, 2018, which is that Capt. VanLierop authorized the following restrictions on plaintiff because he was on administrative segregation:  plaintiff was allowed "dayroom period alone 14:30-15:30" only, he could shower only in the "3West hallway," and he could "rec alone in the Med Unit Courtyard." (Compl. at ECF 26, "Ex. G").  Plaintiff alleges Capt. VanLierop said plaintiff should have been given "the necessary paperwork that warranted [his] placement on Administrative Segregation." (Am. Compl. at ECF 7–8).

IV.   <u>Grievance Process</u>

Plaintiff alleges that on June 27, 2018, he filed a grievance regarding his placement on

administrative segregation and the restrictions Capt. VanLierop had authorized.  Plaintiff claims

non-party Sgt. Hollis improperly filed his grievance and that WCDOC employees were

"deliberately interfering with [plaintiff's] ability to submit and resolve institutional complaints

by way of the grievance process."  (Am. Compl. at ECF 9).  In addition, plaintiff alleges

WCDOC staff, including Sgt. Lopez, improperly processed several other grievances plaintiff had

filed about the events complained of in the amended complaint.

**DISCUSSION**

I.   <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.</u>

<u>Iqbal</u>, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678;

<u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.    Rules 8 and 10(b), and Failure to Identify Specific Constitutional Violations

Defendants argue the Court should dismiss the amended complaint for failure to comply with Federal Rules of Civil Procedure 8 and 10(b), and because plaintiff fails to specify constitutional bases for his claims.

The Court disagrees.

Rule 8(a)(1) requires "[a] pleading that states a claim for relief" contain "a short and plain statement of the grounds for the court's jurisdiction," and Rule 8(a)(2) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The statement should be plain "so as to enable [the adverse party] to answer and prepare for trial."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).  "The statement should be short because [u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  Id.  However, dismissal for failure to comply with Rule 8 "is usually reserved for

those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id.

Rule 10(b) requires a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." However, "[w]here the absence of numbering or succinct paragraphs does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted." Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir. 2005). Moreover, "even where a violation of Rule 10(b) is not harmless, dismissal is not typically the appropriate course of action." Id.

In addition, "[t]he failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of a claim, because factual allegations alone are what matters." Velez v. Sanchez, 693 F.3d 308, 325 (2d Cir. 2012).

Although plaintiff does not identify the specific constitutional rights he alleges were violated, the Court concludes the amended complaint provides enough detail for defendants to understand what plaintiff complains about and whether there are any legal bases for recovery. "Liberally construed, the amended complaint identifies discrete defendants and the actions taken by these defendants that purportedly violated" plaintiff's constitutional rights. See Harnage v. Lightner, 916 F.3d 138, 141 (2d Cir. 2019) (per curiam). Accordingly, the Court declines to dismiss the amended complaint for failure to comply with Rules 8(a)(2) and 10(b), or for failure to specify constitutional bases for the alleged claims.[3]

---

[3]  This is not the first time attorneys in the Westchester County Attorney's office, who are experienced in handling prisoner pro se cases, have moved unsuccessfully to dismiss a pro se prisoner complaint based on Rule 10(b). See Corwell v. Westchester County, 2020 WL 3960985, at *2 (S.D.N.Y. July 13, 2020); Moore v. Westchester County, 2020 WL 1503568, at *3–4 (S.D.N.Y. Mar. 30, 2020). The County Attorney's office is again advised the Court neither appreciates nor will further tolerate having its time wasted by having to repeatedly consider the same, meritless argument. The assistant County Attorney responsible for this case is directed to

III.    Exhaustion of Administrative Remedies

Defendants argue the amended complaint should be dismissed because plaintiff fails to allege whether he fully exhausted his administrative remedies prior to filing this lawsuit.

The Court disagrees.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement."  Williams v. Corr. Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016).  "Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Id.  Thus, when "a prisoner indicates that he has taken some steps toward exhaustion, district courts will normally not infer from his silence that he failed to take the remaining steps that full exhaustion would require."  Huggins v. Schriro, 2015 WL 7345750, at *3 (S.D.N.Y. Nov. 19, 2015), report and recommendation adopted, 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016).  "However, a district court still may dismiss a complaint for failure to exhaust

provide the County Attorney with a copy of this opinion and to direct his attention to this footnote, so that he may take appropriate action within his office.

Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Williams v. Corr. Officer Priatno, 829 F.3d at 122.

Here, it is not clear on the face of the amended complaint that plaintiff failed to exhaust all administrative remedies. To the contrary, plaintiff makes numerous statements in the amended complaint regarding his use of WCDOC's grievance system. Moreover, plaintiff references and has provided copies of various grievances he filed with respect to the complained-of conduct.

Accordingly, at this early stage of the proceedings, the Court will not dismiss plaintiff's claims for failure to fully exhaust administrative remedies. If appropriate, this argument can be raised at summary judgment.

IV.    Deliberate Indifference Claims

Deliberate indifference claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, because "[p]retrial detainees have not been convicted of a crime and thus, may not be punished in any manner—neither cruelly and unusually or otherwise." Darnell v. Pinerio, 849 F.3d 17, 29 (2d Cir. 2017). Liberally construed, plaintiff's amended complaint alleges two types of deliberate indifference claims: first, for conditions of confinement, and second, for failure to protect.

A.    Deliberate Indifference Standard

To state a deliberate indifference claim, plaintiff's allegations must satisfy two prongs: an objective prong and a mens rea prong. Namely, plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d at 29.

To plead the objective prong, a plaintiff must plausibly allege "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." Darnell v. Pineiro, 849 F.3d at 29. This occurs when "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the plaintiff's] health." Id. at 30. "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." Id. Although "the Constitution does not mandate comfortable prisons, prisoners are entitled to basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." Randle v. Alexander, 960 F. Supp. 2d 457, 474–75 (S.D.N.Y. 2013).

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known," of the risk. Darnell v. Pineiro, 849 F.3d at 35. The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

B.      Conditions of Confinement

Plaintiff fails plausibly to state a Fourteenth Amendment conditions of confinement claim with respect to his confinement in 2-East Witness Room #1 or 3-East Witness Room #1.

As regards plaintiff's confinement in 2-East Witness Room #1, plaintiff fails to satisfy the objective prong of the deliberate indifference analysis. Plaintiff does not plausibly allege the failure to provide plaintiff a desk poses an unreasonable risk of serious damage to plaintiff's health or safety.

Plaintiff similarly does not plausibly allege the objective prong of the constitutional analysis respecting the conditions in 3-East Witness Room #1. Although plaintiff alleges the cell had bug and rat infestations, black mold, and a leaky toilet, and that plaintiff suffered from backaches, headaches, trouble sleeping, and bouts of fainting after moving into the cell, plaintiff does not plausibly allege the "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Darnell v. Pineiro, 849 F.3d at 30. For instance, plaintiff does not allege how long his symptoms lasted, or if he received medical attention for such symptoms.

Moreover, even if plaintiff had sufficiently alleged the objective prong, plaintiff does not plausibly allege defendants knew about the conditions of his confinement in 3-East Witness Room #1. Beyond conclusory allegations that Asst. Warden Middleton or Capt. VanLierop had "familiarity with WCDOC prior to [plaintiff] being placed in 3-East Witness Room #1" (Am. Compl. at ECF 12) and that they "personally knew what [plaintiff] was being subjected to" in that cell (id. at ECF 13), plaintiff offers no allegations sufficient to plead the mens rea prong. In other words, plaintiff does not plausibly allege Asst. Warden Middleton or Capt. VanLierop intentionally imposed the conditions of 3-East Witness Room #1, or recklessly failed to mitigate conditions they knew or should have known presented a serious danger to plaintiff's health and safety.

Accordingly, plaintiff's conditions of confinement claim must be dismissed.

C.      Failure to Protect Claim

Defendants argue plaintiff does not adequately plead a Fourteenth Amendment failure to protect claim against defendants.

The Court disagrees.

11

Plaintiff alleges C.O. Arocho ordered another inmate to attack him, that this inmate did attack him, and that plaintiff was injured and sent to the medical unit.  In the context of the objective prong of a failure-to-protect claim under the Fourteenth Amendment, "there is no question that instructing or encouraging other [prisoners] to attack an inmate poses an objectively serious risk of harm."  Smith v. Miller, 2017 WL 4838322, at *12 (S.D.N.Y. Oct. 23, 2017).

Plaintiff also alleges C.O. Arocho ordered a "hit" on him and "falsely conveyed to the other inmate that [plaintiff] was locked up for molesting children."  (Am. Compl. at ECF 5). Taking plaintiff's allegations as true, which the Court must do at this stage in the proceedings, the Court concludes the plaintiff has plausibly alleged that C.O. Arocho told another inmate things about plaintiff that would make C.O. Arocho know, or give him reason to know, that plaintiff was in some danger of being attacked by this other inmate.

Accordingly, plaintiff's failure to protect claim may proceed.

V.      Due Process Claims

The Court liberally construes the amended complaint to raise a due process claim with respect to plaintiff's allegations regarding his March and June 2018 placements on administrative segregation without proper notice.  However, plaintiff's due process claim must be dismissed.

To establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).  "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States."  Hewitt v. Helms, 459 U.S. 460, 466 (1983), overruled in part by Sandin v. Conner, 515 U.S. 472 (1995).

"Procedural due process requires that a pretrial detainee be given written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence before being subjected to <u>punitive</u> as opposed to administrative measures."  <u>Allah v. Milling</u>, 876 F.3d 48, 55 n.3 (2d Cir. 2017) (emphasis added).  Whether the challenged action was punitive in nature is critical to the analysis.  Indeed, the Second Circuit has held the "transfer of an inmate to less amenable and more restrictive quarters for <u>nonpunitive</u> reasons is not a right protected by the due process clause itself."  <u>Covino v. Vermont Dept. of Corrs</u>., 933 F.2d 128, 129 (2d Cir. 1991) (emphasis added).  In addition, "[a] prisoner's <u>administrative</u> classification does not give rise to a protected liberty interest under the Due Process Clause."  <u>Cooper v. City of New York</u>, 2014 WL 5315074, at *4 (S.D.N.Y. Oct. 17, 2014) (emphasis added).

Similarly, "in assessing whether restrictions on pretrial detainees comport with substantive due process, 'a court must decide whether the restriction is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'"  <u>Allah v. Milling</u>, 876 F.3d at 55 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 538 (1979)).  "Absent proof of intent to punish, 'that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'"  <u>Id</u>. (quoting <u>Bell v. Wolfish</u>, 441 U.S. at 538).

"In many cases, a pretrial detainee's placement in a restrictive housing status like Administrative Segregation may be determined to be reasonably related to legitimate governmental purposes."  <u>Allah v. Milling</u>, 876 F.3d at 55.  Indeed, "the Supreme Court has recognized that the government has a legitimate interest in the security of prisons, and that prison

13

officials should be afforded deference 'in the adoption and execution of policies and practices
. . . needed to preserve internal order and discipline and to maintain institutional security.'" Id.
(quoting Bell v. Wolfish, 441 U.S. at 547).

Here, plaintiff has not plausibly alleged he was transferred to administrative segregation
or protective custody for punitive reasons rather than the legitimate purpose of maintaining
institutional security.  Plaintiff similarly fails to allege the restrictions Capt. VanLierop placed
upon him were punitive in nature.

In addition, plaintiff does not identify any state statute, regulation, or rule that arguably
creates a liberty interest in his housing classification.  In any case, "[j]udges of this District have
analyzed relevant New York statues and regulations and determined that they do not give rise to
a protectable liberty interest regarding the administrative classification of inmates."  See Cooper
v. City of New York, 2014 WL 5315074, at *4 (collecting cases).

Thus, because neither the Fourteenth Amendment nor state law accords plaintiff a liberty
interest in his placement in administrative segregation, protective custody, or with respect to
other administrative restrictions placed upon him, and because plaintiff fails plausibly to allege
his housing classification was punitive in nature, his due process claims must be dismissed.

VI.   Grievance Process Claim

The Court also liberally construes plaintiff's amended complaint to allege violations of
his due process rights with respect to the grievance process.

"[I]nmate grievance procedures are not required by the Constitution and therefore a
violation of such procedures does not give rise to a claim under § 1983."  Cancel v. Goord, 2001
WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).  "Therefore, the refusal to process an inmate's
grievance or failure to see to it that grievances are properly processed does not create a claim

14

under § 1983."  Id.  "Indeed, any claim that plaintiff[] [was] deprived of [his] right to petition the government for redress is belied by the fact of [his] bringing this lawsuit."  Alvarado v. Westchester County, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014).

Accordingly, any claim for an insufficient grievance procedure must be dismissed

VII.    Leave to Amend

Plaintiff requests that he be granted leave to amend his amended complaint.  (Doc. #55 at ECF 3).  This request is denied.

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim."  Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000).  District courts "should not dismiss [a pro se complaint] without granting leave to amend at least one when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).  But a "futile request to replead should be denied."  Id.

 Here, plaintiff has already amended his complaint.  Moreover, other than the failure to protect claim, the Court does not find any allegations in the amended complaint, liberally construed, that suggest plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe."  Cuoco v. Moritsugu, 222 F.3d at 112.  On the contrary, the Court finds that repleading would be futile, because the problems with the amended complaint are substantive, and supplementary and/or improved pleading will not cure its deficiencies.  Id.  In addition, plaintiff "has suggested no new material he wishes to

plead."  Id.  Accordingly, the Court concludes it would be futile to allow plaintiff another

opportunity to amend his complaint.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk is instructed to terminate the motion.  (Doc. #43).  The Clerk is also instructed

to terminate from the docket defendants Westchester County, Asst. Warden Middleton, Capt.

Roberts, Capt. VanLierop, Sgt. Grant, and Sgt. Lopez.

By August 17, 2020, defendant C.O. Arocho shall file an answer to plaintiff's amended

complaint as to the failure to protect claim.

By separate order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order

would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose

of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: August 3, 2020
    White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge