UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CLINT EDWARDS,

                          Plaintiff,                         **OPINION & ORDER**

    –against–

                                                                      19 Civ. 1362 (VB)(JCM)

ASSISTANT WARDEN ERIC MIDDLETON, CAPT.
ROBERTS, CAPT. VAN LIEROP, SGT. GRANT, SGT.
LOPEZ, and C.O. AROCHO,

                          Defendants.
-------------------------------------------------------------X

       Before the Court is a series of letter motions, filed on October 21, 2020, November 2, 2020, December 14, 2020, February 9, 2021 and March 11, 2021, by *pro se* Plaintiff Clint Edwards (hereinafter "Plaintiff"), to compel Defendant C.O. Arocho ("Defendant")[1] to produce certain records relating to an alleged assault on Plaintiff by a non-party inmate at the Westchester County Department of Corrections ("WCDC") on May 25, 2018. (Docket Nos. 68, 73, 81, 95, 99). Defendant set forth his position regarding production of these records in letters filed on October 23, 2020, December 4, 2020, January 29, 2021, and February 5, 2021. (Docket Nos. 69, 75, 92, 94). On November 16, 2020 and January 11, 2021, the Court ordered Defendant to review all potentially responsive records if doing so was not unduly burdensome, determine whether any were responsive to Plaintiff's requests, and provide such records to the Court for *in camera* review. Although Defendant's review pursuant to the November 16, 2020 Order did not yield any responsive documents, (*see* Docket No. 75), he identified two responsive records pursuant to the January 11, 2021 Order, (Docket No. 92 at 2). Therefore, on February 4, 2021,

---

[1] On August 3, 2020, the Honorable Vincent L. Briccetti dismissed this action against Defendants Assistant Warden Middleton, Capt. Roberts, Capt. Van Lierop, Sgt. Grant and Sgt. Lopez. (Docket No. 60).

Defendant provided these records to the Court for review *in camera*. (Docket No. 94). For the reasons set forth below, Plaintiff's motions to compel are granted in part and denied in part.

**I. BACKGROUND**

In his Amended Complaint (the "FAC"), Plaintiff alleges that on May 25, 2018, when he was housed in the Old Jail, 2G housing block at WCDC, Defendant violated his constitutional rights by "order[ing]" a non-party inmate to "attack" Plaintiff under the "false" pretense "that [Plaintiff] was locked up for molesting children." (*See* Docket No. 35 ¶ 3). Plaintiff alleges that the inmate "struck [him] several times all over [his] body[,] . . . inflict[ing] pain and suffering." (*Id.*). Plaintiff further alleges that he "do[es] not know why [Defendant] took [these] extreme measures of putting a 'hit' on [him]," but "Sergeant West" of WCDC "had a bit more seniority over [Defendant]." (*Id.*). He asserts that after the incident, he "was escorted to medical" and "wrote out a statement form to Sergeant West" regarding the "assault" because he was "concerned for [his] safety." (*See id.*).

Plaintiff seeks three specific categories of records: (1) recordings of inmate telephone calls made in the Old Jail, 2G Block at WCDC on May 25, 20218 between the hours of 3:00 p.m. and 7:08 p.m.,[2] the time of the alleged assault, and mentioning Plaintiff by name, (Docket Nos. 68, 73); (2) records of the phone numbers dialed in connection with these calls, (Docket No. 81);

---

[2] The Court's November 16, 2020 Order limited Defendant's review of the potentially responsive telephone records to those reflecting calls placed between 3:00 p.m. and 6:00 p.m. on the day of the alleged assault. Pursuant to that Order, on December 4, 2020, Defendant notified the Court that Plaintiff was not mentioned in any of the telephone calls made within that timeframe. (Docket No. 75). On January 11, 2021, upon clarification that the alleged assault did not occur until 7:08 p.m., the Court ordered Defendant to review and advise the Court of any responsive telephone records from between 6:00 p.m. and that time.

and (3) camera footage of various locations in and directly outside of the Old Jail, 2G Block on May 25, 2018 between 3:00 p.m. and 8:00 p.m.,[3] (Docket Nos. 81, 95).[4]

      Plaintiff argues that these records are relevant because they will corroborate his allegations in the FAC that Defendant ordered another inmate to put a "hit" on him. (Docket Nos. 68, 73, 81, 95; *see also* Docket No. 35 ¶ 3). With regard to the telephone records, Plaintiff alleges that in connection with the alleged assault, at Defendant's instruction, another inmate called his family on the date of the incident and asked them to "look[] up" Plaintiff's name on the Department of Corrections and Community Supervision ("DOCCS") website. (Docket No. 73 at 1; *see also* Docket No. 68 at 1). At the November 16, 2020 status conference, Plaintiff explained that the inmate did so to verify the crime Defendant told him that Plaintiff committed. Plaintiff asserts that because Plaintiff used a nickname while he was incarcerated at WCDC, the inmate could not have provided Plaintiff's full name to the call recipient unless Defendant gave it to him. (Docket Nos. 68 at 1, 73 at 1). Plaintiff further argues that these recordings do not implicate any privacy concerns because all inmate telephone calls at WCDC are recorded. (Docket No. 73 at 2). With regard to the camera footage, Plaintiff asserts that it will show his

---

[3] In Plaintiff's most recent letter to the Court, he requested camera footage from 3:00 p.m. to 7:00 p.m. without explaining whether he wished to withdraw his request for such footage between 7:00 p.m. and 8:00 p.m. (Docket No. 99). Therefore, the Court addresses Plaintiff's original request for footage from 3:00 p.m. and 8:00 p.m.

[4] On December 11, 14 and 28, 2020, Plaintiff also sought (1) camera footage of the alleged assault; (2) camera footage of himself making phone calls from the Old Jail, 2G Block between 3:00 p.m. and 8:00 p.m. on the date of the alleged assault; (3) records of the phone numbers he dialed on that date; and (4) Defendant's disciplinary records. (Docket Nos. 79, 81, 83). However, these requests have been resolved. At the status conference on January 11, 2021, Defendant represented that he had provided Plaintiff camera footage of the alleged assault, and agreed to produce any existing disciplinary records. (*See* January 11, 2021 Minute Entry; *see also* Docket No. 82 at 1). However, Defendant objected to producing any camera footage of Plaintiff making telephone calls and/or the numbers he dialed, reasoning that such footage was irrelevant to Plaintiff's claims and none of the calls were completed. (*See* January 11, 2021 Minute Entry). Therefore, the Court denied Plaintiff's requests for production of this footage and telephone numbers. The Court further ordered Defendant, by January 29, 2021, to advise the Court of (1) any responsive telephone calls placed by other inmates from 6:00 p.m. until the time of the assault on May 25, 2018; (2) any outstanding camera footage of Plaintiff's interactions with correction officers between 3:00 p.m. and the time of the alleged assault on the same date; and (3) the status of production of Defendant's disciplinary records. (*Id.*). On January 29, 2021, Defendant reported that no responsive disciplinary records existed, and advised the Court of the remaining records addressed in this Opinion & Order. (Docket No. 92).

interactions with Sergeant West as well as Defendant on the date of the incident, and "probably" "would . . . show [Defendant] speaking to" the inmate who assaulted him, Paul Small. (Docket No. 95 at 4; *see also* Docket No. 81 at 2). He argues that the camera footage is particularly relevant because (1) Sergeant West "took [Plaintiff's] side" in an argument directly preceding the alleged assault, causing Defendant to order the "hit" on him, (Docket No. 81 at 2; *see also* Docket No. 95 at 2); and (2) it will confirm his allegations in the FAC that after the assault took place, Plaintiff complained to Sergeant West. (*See* Docket No. 95; January 11, 2021 Minute Entry).

In response, Defendant counters that any responsive telephone records should not be disclosed because they "implicate[] privacy concerns for both the caller and the receiver of the phone calls," and are irrelevant, unlikely to lead to the discovery of admissible evidence and constitute hearsay. (Docket No. 94 at 1-2). Defendant requests that to the extent these records must be produced, the Court permit that they be provided to Plaintiff in the form of transcriptions with redactions to prevent disclosure of any personal identifying information related to the caller or receiver. (*Id.*). As to the camera footage, Defendant contends that it is not responsive to Plaintiff's request because "there is no indication of any interactions between Plaintiff and WCDCR Correction Officers and/or staff during the requested time period beyond the routine, ordinary course of WCDCR staff-inmate interaction (i.e., general orders to the Block to lock in, etc.)." (Docket No. 92 at 2). Defendant also urges that discovery of these records would pose "[a] potential danger of exposing potential limitations in the WCDR surveillance system." (*Id.*).

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 26 provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The party seeking discovery bears the initial burden of proving that the [requested materials are] relevant." *Citizens Union of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). Once this initial burden is satisfied, the "party object[ing] to [the] discovery . . . bears the burden of showing why discovery should be denied." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016). The objecting party must show "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant." *In re Terrorist Attacks on Sept. 11, 2001*, 03-MD-1570 (GBD)(SN), 2018 WL 4237470, at *7 (S.D.N.Y. Aug. 29, 2018), *rev'd on reconsideration in part on other grounds*, 2019 WL 192120 (S.D.N.Y. Jan. 15, 2019)[5] (quoting *McKissick v. Three Deer Ass'n*, 265 F.R.D. 55, 56–57 (D. Conn. 2010)). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 07888 (SAS)(DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).

---

[5] If Plaintiff does not have access to cases cited herein that are available only by electronic database, then he may request copies from Defendant's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.").

District courts have broad discretion when addressing motions to compel discovery. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999).  The Court also has "broad discretion in determining relevance for discovery purposes." *Michael Kors, L.L.C. v. Su Yan Ye*, 1:18-CV-2684 (KHP), 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019).  Under the Federal Rules of Civil Procedure, relevance must be "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Michael Kors*, 2019 WL 1517552, at *2.

Additionally, because Plaintiff is pursuing this action *pro se*, the Court is required to liberally construe and interpret his submissions "'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also Shim-Larkin v. City of New York*, 16-cv-6099 (AJN), 2017 WL 4862790, at *2 (S.D.N.Y. Oct. 25, 2017).  "[A] *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984).  On the other hand, this liberal treatment "does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

## B. Telephone Records

After reviewing *in camera* the two responsive telephone records, (1527288676_283_13_139_799.wav, 1527287699_283_12_158_894.wav), the Court finds that they are relevant for discovery purposes. Construed liberally, the FAC raises a Fourteenth Amendment failure to protect claim pursuant to 42 U.S.C. § 1983[6] whereby Defendant "order[ed]" a "hit" on Plaintiff by telling another inmate that Plaintiff was "locked up for molesting children," which Defendant had reason to know would incite the inmate to attack Plaintiff. (Docket No. 35 at ¶ 3; *see also* Docket No. 60 at 12). Among other things, a successful failure to protect claim against a prison official under Section 1983 requires a "tangible connection between the acts of a defendant and the injuries suffered." *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986); *see also Brown v. Picarelli*, No. 96 Civ. 1222 (RMB)(RLE), 2003 WL 1906180, at *3–4 (S.D.N.Y. Apr. 15, 2003), *report and recommendation adopted*, 2003 WL 21297287 (S.D.N.Y. June 4, 2003).

The subject telephone records are relevant because they directly corroborate Plaintiff's core allegations that Defendant "put [his] safety at risk." (Docket No. 68 at 1). Apart from mentioning Plaintiff by his full name, both telephone records – which reflect calls placed under one hour before the alleged assault – contain conversations between the same inmate and call recipient regarding the charges against Plaintiff according to the DOCCS website, including rape. (1527288676_283_13_139_799.wav, 1527287699_283_12_158_894.wav). During the call placed at 6:51 p.m., less than twenty minutes before the alleged assault, the inmate speculates

---

[6] Deliberate indifference claims brought by pretrial detainees such as Plaintiff are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, which applies to such claims brought by convicted prisoners. *See Darnell v. Pinerio*, 849 F.3d 17, 29 (2d Cir. 2017). However, "[c]ourts . . . apply the same failure to protect standard under the Eighth Amendment to claims brought by pretrial detainees under the Fourteenth Amendment." *Alicea v. City of New York*, No. 16 Civ. 7347 (LAP), 2020 WL 1528478, at *4 (S.D.N.Y. Mar. 31, 2020).

whether Plaintiff was accused of raping a child, noting that an unnamed "C.O." approached him with that information and that he would "snuff" Plaintiff. (1527288676_283_13_139_799.wav; Docket No. 93 at 2). There are also a few pauses in the 6:34 p.m. call where the inmate speaks to others in physical proximity of the phone confirming that Plaintiff was charged with rape. (1527287699_283_12_158_894.wav; Docket No. 93 at 2). Given the factual similarities between these conversations and the misconduct alleged in the FAC, (Docket No. 35 at ¶ 3), the calls are highly relevant for discovery purposes. *See Goodloe v. City of New York*, 136 F. Supp. 3d 283, 293 (E.D.N.Y. 2015) (finding requested information relevant because it supported claim that defendants orchestrated conspiracy charges and coerced confidential informant to make particular false statements); *Fox v. Milosevic*, 9:05-CV-1292 (LEK)(GJD), 2008 WL 11506052, at *2 (N.D.N.Y. May 6, 2008) ("Since plaintiff claims that defendants . . . conspired to deny plaintiff medical care, and were in contact by telephone . . . as part of that conspiracy, . . . the Court cannot say that these telephone records . . . are irrelevant to plaintiff's claims."). Moreover, as the scope of inquiry for discovery is generally broader than the test for admissibility at trial, Defendant's hearsay objections are premature. *See* Fed. R. Civ. P. 26(b)(1); *see also Huayuan Chen v. Stony Brook Univ.*, CV 15-6698 (JMA)(AYS), 2018 WL 1368031, at *5 (E.D.N.Y. Mar. 16, 2018); (Docket No. 94 at 2).

Furthermore, any privacy interests can be adequately protected by redacting all personal identifying information (*i.e.*, name and phone number) belonging to the recipient of these calls. *See Dean v. New York City*, 15-CV-8825 (LAK) (KNF), 2017 WL 3671856, at *8 (S.D.N.Y. July 6, 2017) ("[D]efendants failed to . . . explain . . . why any non-party privacy concerns cannot be addressed by redactions or a protective order."). Indeed, discovery of the recipient's personal information is unwarranted because the FAC does not allege that the recipient of the

call was involved in the alleged assault in any way.[7]  However, neither the caller nor the recipient have a legitimate expectation of privacy in the rest of their conversations during the two calls, both of which were preceded by an express warning that they may be monitored by prison personnel.  *See United States v. Garcia*, No. 90 CR. 724 (DNE), 1991 WL 120239, at *2 (S.D.N.Y. June 21, 1991).  Absent any showing that these calls contain sensitive information or implicate safety or security concerns for WCDC, the mere fact that these are "personal calls made by other . . . inmates" is insufficient to bar their production. (Docket No. 69 at 1); *see also id.*

Therefore, the Court grants Plaintiff's motion to compel discovery of the two telephone records with redactions protecting the call recipient's name, phone number and any other personal identifying information related to that individual.  The Court further directs Defendant to preserve these records for use at trial.  However, the Court denies Plaintiff's motion for disclosure of the telephone number(s) dialed in connection with these calls, as they constitute personal identifying information belonging to the call recipient.

## C.  Camera Footage

Given that the statements in the telephone records are consistent with Plaintiff's allegations, and this Court's "obligation . . . to make reasonable allowances to protect" Plaintiff's rights, *Traguth*, 710 F.2d at 95, disclosure of a limited portion of the subject camera footage is warranted because it may further support Plaintiff's case.  To prevail on his failure to protect

---

[7] The Court is unaware of any instances in the two recordings where the name of the inmate who placed the two calls is mentioned.  However, to the extent that his identity is known or his name is audible, this information is not subject to redaction because the records suggest that he participated in the alleged assault, and may have relevant information regarding the "C.O." who approached him regarding Plaintiff's charges. *See Fox*, 2008 WL 11506052, at *2; (1527288676_283_13_139_799.wav); *see also Byfield v. Chapman*, No. 12–CV–6131, 2013 WL 5354522, at *3 (W.D.N.Y. Sept. 24, 2013) (directing production of names of inmate witnesses of alleged assault).  Therefore, the Court denies Defendant's request to redact the name of this inmate and directs him to produce the name of this inmate, if known.

claim, in addition to establishing a "tangible connection" between his injury and Defendant's actions, *see Brown*, 2003 WL 1906180, at *3, Plaintiff will be required to demonstrate that Defendant was "deliberately indifferent" to his health or safety, *see Farmer v. Brennan*, 511 U.S. 825, 832–34 (1994).

Plaintiff argues that the subject footage will support this claim because the footage will show (1) Sergeant West taking Plaintiff's side over Defendant's in a verbal argument, which motivated Defendant's actions; and (2) Plaintiff complaining about his fear for his safety to Sergeant West after the incident. (*See* Docket Nos. 81 at 2, 95 at 3; January 11, 2021 Minute Entry). Plaintiff also asserts that it "would . . . probably show" Defendant speaking to the inmate who assaulted him. (Docket No. 95 at 4). Defendant submits that the requested footage should not be disclosed because it is non-responsive and poses security concerns. (Docket No. 92 at 2).

The Court is not persuaded by Defendant's objection that none of the requested footage is responsive. (Docket No. 92 at 2). To the contrary, if the footage indeed contains visual or auditory evidence of the argument Plaintiff cites, it is both responsive and highly relevant to Defendant's intent, which is an essential element of Plaintiff's deliberate indifference claim. *See Farmer*, 511 U.S. at 834; *Johnson v. Ganim*, 342 F.3d 105, 117 (2d Cir. 2003). Moreover, as the telephone records corroborate Plaintiff's claim that an inmate on his housing block "looked . . . up" his charges pursuant to a conversation with a "C.O." on the day of the alleged assault, (1527288676_283_13_139_799.wav; Docket Nos. 68, 73 at 1-2), Plaintiff should be permitted to utilize visual and/or auditory evidence of any interactions between Defendant and other inmates on the block before the alleged assault. Such evidence may provide additional support for Plaintiff's allegations and that Defendant had a "tangible connection" with the injuries he suffered. *See Brown*, 2003 WL 1906180, at *3. The same is true with regard to camera footage

of the phone booths on the housing block, as the 6:34 p.m. telephone record suggests that the inmate who placed the call coordinated with others within earshot to verify the charges against Plaintiff. *See id.*; (Docket No. 81 at 2; 1527287699_283_12_158_894.wav).

Consequently, with regard to the requested footage *preceding* the alleged assault, Plaintiff has established that he is not engaging in a "fishing expedition" in search of evidence to fuel this litigation; rather, he has "provided bases for [this] proposed discovery that may support his claims." *See Chamberlain v. Farmington Sav. Bank*, 247 F.R.D. 288, 292 (D. Conn. 2007) (internal quotation marks omitted). Moreover, simply because the footage Defendant's counsel reviewed does not reveal any interactions between Plaintiff and correction officers "beyond" what Defendant describes as "routine, ordinary course of WCDCR staff-inmate interaction," (Docket No. 92 at 2), does not foreclose the possibility that it captured a conversation between Plaintiff and Defendant that Plaintiff describes as an "argu[ment]," (Docket No. 95 at 3).

Furthermore, although unfettered dissemination of this footage could certainly endanger the jail security system, Defendant does not explain why that concern bars disclosure of these materials altogether. The Court is cognizant that surveillance videos from correctional facilities are highly "sensitive" and must be treated as confidential for discovery purposes, because they may "provide information . . . that could be used to exploit potential gaps in surveillance," such as "the geographical layout of the jail, the location of the cameras, [and] the view from the cameras." *See Sampel v. Livingston Cty.*, 17-cv-06548-EAW-MJP, 2019 WL 6695916, at *3 (W.D.N.Y. Dec. 9, 2019), *reconsideration denied*, 2020 WL 1861715 (W.D.N.Y. Apr. 14, 2020). Indeed, courts have found good cause to restrict public access to footage capturing "the manner in which officers respond[] to . . . incidents [at prisons] and the techniques used to gain control of [inmates]," which "could be used by inmates to create a disturbance or uprising, or

attempt to escape," or might otherwise compromise the safety of facility staff, inmates and the public. *See Harris v. Livingston Cty.*, 14-CV-6260-DGL-JWF, 2018 WL 6566613, at *2–3 (W.D.N.Y. Dec. 13, 2018) (internal quotation marks omitted); *see also Sampel*, 2019 WL 6695916, at *3; *McMillen v. Windham*, No. 3:16-CV-558-CRS, 2018 WL 652829, at *4 (W.D. Ky. Jan. 31, 2018). However, rather than foreclosing discovery of this footage, such courts have issued protective orders prohibiting its use beyond the pending litigation and/or its dissemination to the wider public. *See, e.g.*, *Sampel*, 2019 WL 6695916, at *3; *Harris*, 2018 WL 6566613, at *2–3; *McMillen*, 2018 WL 652829, at *4; *Wright v. Austin*, No. 3:15-CV-05887-BHS-JRC, 2016 U.S. Dist. LEXIS 168646, *4 (W.D. Wash. Dec. 5, 2016). Defendant offers no reasons why that cannot be done here. His objection is also belied by the fact that he did not raise any similar security concerns before arranging for Plaintiff to view the surveillance footage that captured the alleged assault, also at WCDC, on the same date. (*See* Docket No. 82). Therefore, the Court grants Plaintiff's request for camera footage before the incident at 7:08 p.m. as set forth on page 14, directly before Section III.[8]

As to camera footage of Plaintiff's post-incident complaint, however, that material need not be disclosed because it does not "bear on" any of Plaintiff's allegations, nor would its disclosure lead to discovery of "other matter[s] that could bear on" these claims. *See State Farm Mut. Auto. Ins. Co.*, 2015 WL 7871037, at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (internal quotation marks omitted). This post-incident information is not

---

[8] Notwithstanding this finding, the Court denies Plaintiff's request that he be provided the footage from each and every camera in and/or at the entrance of the 2G housing block "to make sure it's the right camera." (Docket No. 95 at 1, 3). Plaintiff does not explain why all of this footage is relevant to his claim, (*see id.*), and the disclosure of hours' worth of surveillance footage from all camera angles on the block would pose a significant security risk. *Cf. Sampel*, 2019 WL 6695916, at *3. Therefore, to protect this concern as well as Plaintiff's right to the relevant footage, the Court directs Defendant to ensure that his production encapsulates the relevant footage from all cameras in and/or at the entrance of the housing block, including those referenced in Plaintiff's February 9, 2021 letter, in accordance with this Opinion & Order. (Docket No. 95).

relevant to whether Defendant acted with deliberate indifference to Plaintiff's safety or met the other elements of Plaintiff's failure to protect claim. *See generally Hartman v. Snelders*, 04 CV 1784 (CLP), 2010 WL 11626508, at *29 (E.D.N.Y. Jan. 28, 2010); *see also Farmer*, 511 U.S. at 832–34.  In addition, there is no indication that visual or auditory evidence of this conversation, which did not involve Defendant or any other inmates, would lead to further information that would substantiate Defendant's liability. *See State Farm Mut. Auto. Ins. Co.*, 2015 WL 7871037, at *2.

Furthermore, this footage is not likely to be admissible at trial for the purpose Plaintiff desires, *i.e.*, to demonstrate that the allegations in his complaint are true. (*See* January 11, 2021 Minute Entry).  Evidence demonstrating that Plaintiff reported the alleged assault to Sergeant West would constitute extrinsic evidence which, other than evidence of criminal convictions, cannot be offered to prove specific instances of a witness's conduct in order to attack or support that witness's character for truthfulness. *See* Fed. R. Evid. 608(b).  Moreover, Plaintiff himself participated in the subject conversation with Sergeant West, and should have already received a copy of the written complaint he submitted to Sergeant West pursuant to the Court's Scheduling Order dated September 2, 2020 and Local Civil Rule 33.2.[9] (*See* Docket No. 65).  Therefore, at trial, to the extent that Plaintiff wishes to use this post-incident complaint as impeachment

---

[9] Local Civil Rule 33.2 requires defendants in certain *pro se* prisoner cases to respond to specific, court-ordered discovery requests. *See* S.D.N.Y. Civ. R. 33.2.  Among other things, these court-ordered discovery requests require production of (1) incident reports, unusual incident reports, witness statements, and injury to inmate reports "in the custody, possession or control of the Department or Facility prepared by or at the direction of any employee of . . . any . . . governmental entity in connection with the Incident;" as well as (2) "all files . . . made in the course of any completed investigation by the Department of Investigations, Inspector General or Internal Affairs Division (or similar groups) into the incident." U.S. District Court for the Southern District of New York, *Plaintiff's Local Civil Rule 33.2 Interrogatories and Request for Production of Documents*, https://www.nysd.uscourts.gov/sites/default/files/2018-06/lr-332-interrogatories.pdf.  The Court deemed Local Civil Rule 33.2 applicable to this action on March 25, 2019 and on September 2, 2020, directed compliance with the same by November 2, 2020. (Docket No. 65).  At the conference on November 16, 2020, Defendant represented that he had served initial disclosures per the Court's previous orders. (*See* November 16, 2020 Minute Entry).

material against Sergeant West, he "already has access to evidence that would allow [him] to prepare such a line of questioning." *See Guercia v. Equinox Holdings, Inc.*, No. 11 Civ. 6775, 2013 WL 2156496, at *5 (S.D.N.Y. May 20, 2013). Consequently, production of any camera footage from after the alleged assault is unwarranted. *See id.*

The Court therefore grants Plaintiff's motion for discovery of a limited universe of camera footage and directs Defendant to preserve the same for trial. This footage must encompass any videos captured by *each* camera in *and* directly outside of the 2G housing block between 3:00 p.m. and 7:08 p.m. on May 25, 2018, to the extent that they show (1) any interactions between Plaintiff, Defendant and Sergeant West, separately or together; (2) any interactions between Defendant and other inmates; and (3) any interactions between the inmate who placed the two relevant phone calls, and any other individuals who were in the gallery while he placed such calls. However, the footage may not be used for purposes unrelated to this litigation or disseminated to the public. *See Harris*, 2018 WL 6566613, at *2–3.

### III. CONCLUSION

In conclusion, the Court directs Defendant to disclose the records that are subject to discovery in accordance with this Opinion & Order by April 5, 2021. To do so, Defendant shall arrange for Plaintiff to listen to redacted versions of the telephone recordings and view the camera footage at Sing Sing Correctional Facility ("Sing Sing"), where he is currently being held. Public disclosure of such camera footage, as well as its use for purposes beyond this litigation, is prohibited. Defendant shall also provide Plaintiff with redacted transcriptions of the recordings as described above. The Court further directs Defendant to provide Plaintiff with the name of the inmate who made the subject telephone calls so Plaintiff can call him as a witness at trial. Finally, Defendant is directed to preserve all copies of these records in advance of trial.

The Clerk of Court is requested to mail a copy of this Opinion & Order to the *pro se* Plaintiff.

Dated: March 15, 2021
      White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge